# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Criminal No. 05-342 (RCL)** |
| ) | |
| **ARCHBOLD-MANNER, et al.,** ) | |
| **Jesus Antonio Murillo-Lenis (2)** ) | |
| **Ranfer Rios-Mercado (3),** ) | |
| **Carlos Delgado-Gomez (10)** ) | |
| **Enrique Oyola-Ropero (12),** ) | |
| **Jose Hugo Alvarez-Lozano (15)** ) | |
| **German Villegas-Mejia (17),** ) | |
| **Gerardo Tobon-Rojas (18) and** ) | |
| **Fernando Zapata-Bermudez (19)** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' JOINT RESPONSE TO
## GOVERNMENT'S NOTICE REGARDING AVAILABILITY OF EVIDENCE

NOW COME Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Carlos

Delgado-Gomez, Enrique Oyola-Ropero, Jose Hugo Alvarez-Lozano, German Villegas-Mejia,

Gerardo Tobon-Rojas, and Fernando Zapata-Bermudez, by and through undersigned counsel,

and in advance of this Court's Status Conference scheduled for September 12, 2008, at 2:30

p.m., file this pleading to provide this Court with an overview of the status of discovery in this

case, and to renew their call for dismissal of this case.

In response to this Court's Order of August 15, 2008, the Government has filed various

pleadings [261, 262, 263] in attempt to publicly notify this Court of its progress in producing

discovery.  When examined more closely, however, the Government's actual productions suffer

from serious deficiencies, and in any event fail to comply with both the letter and spirit of this

Court's August 15 Order. Accordingly, dismissal of the indictment remains warranted.

## OVERVIEW

The defendants acknowledge that the Government has now produced, less than a month

before the first trial scheduled in this case, a considerable quantity of additional discovery. The

Government has produced this discovery 2-3 weeks after this Court's August 15, 2008 Order.

Obviously, the Government could and should have exercised its diligence long ago. The case

was indicted years ago, and the defendants have been in custody without bond for 1-2 years. But

even now, and despite the Government's belated efforts, the status of discovery is not even close

to where the Court's recent order commanded it to be.

We will detail how the recent productions do not comply with the August 15 Order, but

by way of overview, the defendants note that, rather than a focused production of discovery that

would have narrowed the issues for trial, as the Court had every right to expect, the

Government's latest productions raise more concerns, and magnify the doubts that the

defendants can receive a trial that complies with cherished norms of due process.

The defendants still have not received any designations of evidence, exhibit books, or

trial binders of any kind. What the defense has received in the past few days, instead, is largely a

mass evidence dump. On September 8, 2008, for example, the Government produced to the

defense CDs with nearly 10,000 pages of new discovery; while the Government's cover letter

did lump these documents into a few categories, all of these documents are in Spanish only, with

no translations. On September 11, 2008, the Government also made available physical evidence

to the defense for inspection; essentially, defendants were led into a room filled with bags

assigned to certain specified defendants. These bags contained thousands of additional

documents, almost all of which were written in Spanish, as well as occasional cellphones and other electronic media. None of the data from any of these devices has been printed down or provided in readable form as a part of discovery, despite the Government's representations that nothing exculpatory exists.[1] The Government has provided no indication whatsoever of which evidence in this room, or which of the thousands of newly-produced pages it provided, if any, might be used by the Government at trial.

Beyond these specifics, and in a more global sense, the Government's theory of the case has also only grown more opaque. In its August 15, 2008 Order, for example, this Court denied defense motions for a schematic of the interrelatedness of the conspiracy, and for a bill of particulars. While denying these motions, however, the Court clearly encouraged the Government to provide guidance to the defense voluntarily, so that the defendants would reasonably know what to expect at trial. This Court, for example, pointedly noted how it would, "when assessing defendants' motions to dismiss, consider the extent to which the government has provided information sufficient for the defendants to adequately evaluate the case against them and to prepare an adequate defense." [238], at 4. *See also* [238], at 5 ("While the Court will not specifically order the government to produce a bill of particulars, any failure to state the alleged charges with precision will be taken into account when the Court considers defendants' motions to dismiss.").

What has emerged in the latest mass dump of discovery is a vast hodgepodge, creating additional confusion and providing inadequate notice to any defense counsel about what to reasonably expect at trial. To illustrate the point, we attach, as Exhibit A, the diagram of

---

[1] To evaluate this evidence, the defendants would presumably need to hire experts to review this physical evidence on-site, or to download copies to evaluate this electronic data. When asked during the physical inspection, the Government indicated that cellphones and electronic media could not be turned on by defense counsel for an informal review at that time, due to concerns that evidence contained thereon might be lost or tainted.

conspirators just produced in the latest round of discovery. We ask this Court to compare this diagram to a page that was previously contained in a Government Power Point summary of the case, which was produced earlier in this case. *See* Exhibit B. The diagrams appear totally at odds with each other. The two diagrams do not contain the same people. Mr. Alvaro Serrano Archbold-Manner – supposedly the lead defendant in this case – does not even appear on the latest-produced graph of interrelatedness. These do not even appear to be from the same case – they involve wholly different organizations and investigations. To put it bluntly: no defense counsel can reasonably prepare for a conspiracy trial upon being provided information like this. We have no idea what to expect, and rather than due process, our clients face a trial by ambush.

Since this Court's August 15 Order, the Government's case has not grown clearer, but only hazier and crazier. And in large measure, this is due to the Government's failure to comply with the specific directives contained in that Order, as noted below.

## NONCOMPLIANCE WITH THIS COURT'S AUGUST 15, 2008 ORDER

This Court's August 15 Order specified five Specific Discovery Deadlines. None has been met:

### A. Certified Original Language and English Transcripts

First, this Court required that wiretap transcripts be certified, in both Spanish and English:

> 1. Defendants' motion [188] to compel production of wiretap calls is GRANTED. The government shall, no later than September 1, 2008, produce all telephone calls that it intends to use at trial *along with certified original language and English transcripts.*

[238], at 1. As of today, no <u>original language</u> certifications of these wiretaps – <u>at all</u> – have been provided by the Government. The accuracy of the Spanish transcripts thus remains wholly unverified.

4

Obviously, the Government's English translations were made from, and are thus reliant upon, the validity of those unverified Spanish transcripts, tainting them as well. And while the Government has purported to provide so-called "certifications" of the English translations that have recently been provided by the Government, these do not comply with the expectations of the August 15 Order or provide any real comfort that the Government's transcripts are accurate.

The Government has failed to properly certify the English-language translations of the Spanish-language transcriptions of the wiretap evidence. Ever since the Court Interpreters Act of 1978, a *minimum* requirement for interpreters and translators in the federal courts is that the professional be certified by an examination administered under the authority of the Administrative Office of the United States' Courts (AOUSC). *See* 28 U.S.C. § 1827. This obligation is also binding on the United States: "Each United States district court shall maintain on file in the office of the clerk, *and each United States attorney* shall maintain on file, a list of all persons who have been certified by the Director in accordance with subsection (b) of this section. 28 U.S.C. § 1827(c)(1). The clerk of the court,..., shall be responsible for securing the services of *certified interpreters* for proceedings initiated by the United States, except that the United States attorney is responsible for securing the services of *such interpreters* for governmental witnesses." 28 U.S.C. § 1827(c)(2) (emphasis added).

The Government claims that the defendants themselves will be *witnesses* through their own and other wiretapped conversations. Clearly the law requires that their words be translated by a federally certified interpreter, and that substandard translations not be admitted into evidence. This is especially true because it appears that all of the audio evidence is in Spanish, and the jury will not be able to assess the accuracy of any translation on its own.

In fact; in a complex international case, where the defendants are at risk of decades of incarceration each, and *where a substantial portion of the evidence is in Spanish*, the Government should have used, in the translation of its evidence, persons whose education, background, and experience qualify them as competent under the law.

Essentially, the Government's so-called "certifications" appear to consist of a contract translation company's corporate business owner signing form documents for each translation, simply attesting to the fact that the person who did the translating, whose qualifications are never described, was proficient in Spanish and did their best on the translation. The defense submits that some of the translations provided by the Government are *not even in standard North American English,* contrary to the asseveration in the so-called certifications provided by the Government, raising the possibility of substantive inaccuracies, and improper suggestions that the defendants were not holding normal conversations, but are "speaking in code." The defendants reserve the right to supplement this issue at the Status Conference, but will note at this stage that the type of "certifications" provided here could just as easily be made with respect to a Spanish-speaking domestic worker in one's home – that they are fluent in Spanish, and did their best on the translations. That surely is not what this Court's August 15 Order anticipated,[2] and it is not what the Court Interpreter's Act requires.

While it is true that the Government provided many translations on September 1, 2008, those documents, unfortunately, will not assist the parties or the Court in being ready for trial.

---

[2] In a September 5, 2008 letter of production, the Government also advised that it planned to produce additional English translations for 43 legal sized pages (a 20-page transcript, plus a spreadsheet summary and 20 pages of corresponding transcripts) that it claimed were "inadvertently omitted" from the wiretapped transcripts it had sent for translation. The Government did not seek relief from this Court's Order, at 6 ("Failure to comply with any of the deadlines or directions listed in this ORDER will result in the government's inability to use the relevant evidence at trial."), but simply said these would be provided on September 10, 2008, well after this Court's September 1, 2008 cutoff. In an email today (September 11), Government counsel attached these English translations, and also advised that it "will be" providing a Notice of Experts and unspecified "additional discovery."

Rather than the usual collaboration between the parties to agree on minor word changes for trial use, the defendants are in the difficult posture of having to start at the beginning to obtain accurate translations of the wiretapped conversations. This prospect would be enormously time-consuming at this very late stage before trial, and again, is not what was contemplated by the Court, which put the onus on the Government to provide complete, verified and accurate transcripts.

In sum, the Government has not complied with Specific Discovery Deadline #1. This Court lacks any reasonable assurance that the wiretap transcriptions and translations are accurate, and at a minimum, all wiretap evidence should be excluded from the evidence presented at trial.

### B. Instructions for Verifying Lab Test Results

Second, this Court ordered the Government to produce by September 1, 2008, not only all lab tests it planned to use at trial, but also "clear instructions" on how those tests could be verified:

> 2. The government shall, no later than September 1, 2008, produce any lab tests or other documentation that it intends to use to prove that seized evidence was cocaine. *This documentation must be accompanied with clear instructions regarding how defense counsel can verify the accuracy of the tests.*

The Government has produced certain lab tests. But all except those regarding the Dan Viking are in Spanish only. No translations have been provided, and no instructions were provided that "accompanied" these lab tests, as the Order directed, describing how defense counsel could verify the accuracy of the tests. None of the drugs or packaging of any type have been provided for Counts Two, Three or Five (the Colombian seizures).[3] And although the Government specifically represented to this Court, shortly after the August 15 Order, that it "will provide, by

---

[3] No controlled substances were seized related to Count Four, which involves only an attempt to distribute drugs on the Guayacan. So, in other words, the only drugs or packaging that apparently exists at all relates to the Dan Viking seizure – which constitutes Count Six, and is one portion of the larger conspiracy alleged in Count One.

September 8, 2008, the phone numbers of the chemists so that they can be contacted to verify the veracity of the tests," [246], at 4-5, and also that it "will provide resumes of all chemists, and will allow the opportunity to interview the Colombian chemists by phone," [246], at 6, no such resumes or other phone numbers verified as current for these chemists were timely provided.

From the Government's productions, it also now appears that, in this case allegedly involving some 4,000 kilograms of cocaine seized, almost every bit of this evidence (all but one sample seized from the M/V Dan Viking) has been destroyed. No cocaine exists anymore for most of the Counts in this indictment; accordingly, the defense generally cannot test or verify this evidence itself, through its own experts. The Government is hinging the vast majority of its prosecution on lab results from Colombia, and claims that it will provide the defendants with the opportunity to discuss results with those chemists. However, the Government's failure to provide the lab reports and related documentation in English precludes any discussion until the documents are in an understandable format. The need for instructions to verify the accuracy of those test results is vital, as the August 15 Order recognized. But the necessary information is absent here; for most counts, all the defense has received so far are Spanish lab reports.

For the single sample apparently available, taken from the M/V Dan Viking, a laboratory report has been provided in English. Yet even this analysis is far different from what one normally sees in a DEA-conducted examination; it consists of only one page. There are no chain of custody documents, and no chemists' notes, as one would typically expect. And despite the fact that all controlled substances aboard the Dan Viking were seized and maintained by the U.S. government, this sample has not yet been made available for review in this jurisdiction.[4]

---

[4] In an after-hours filing on Wednesday, September 3, the Government said that defense counsel could contact them by 5:00 p.m. Thursday if they wanted to review the sample on Friday at noon – in Miami. Defense counsel could not do this, and the Government now says it will bring this sample to Washington, D.C., sometime soon.

In short, the Government has not complied with Specific Discovery Deadline #2. For these reasons, any laboratory reports and test results related to the drug seizures should be excluded from evidence.

## C. Physical Evidence the Government Intends to Use at Trial

Third, this Court ordered the following:

> 3. The government shall, no later than September 8, 2008, produce any physical evidence that it intends to use at trial.

As noted above, the defense continues to have no idea what physical evidence the Government intends to produce at trial, since the Government has not provided any evidence designations in correspondence or trial binders, specifying the items of evidence that it intends to use at trial (other than a cocaine sample from the Dan Viking, which the Government said defense counsel would need to travel to Miami to review if we wanted to view this evidence before the Order's stated deadline).

On September 8, the Government did allow defense counsel to review certain items it had seized, by ushering defense counsel into a room where bags of evidence were provided for certain defendants. But the vast majority of these thousands of pages of documents produced were in Spanish only. It also appears that the Government's production of physical evidence on September 8 may have been incomplete. For example, no physical evidence was provided on certain co-defendants who have already been arrested in this case, but who are believed to have entered guilty pleas and are planning to cooperate and testify against these defendants at trial. For example, no physical evidence bags were provided for lead co-defendant Alvaro Serrano Archbold-Manner, co-defendant Juan Jose Heredia-Lopez, or even co-defendant Gareth Daviton Lewis, who had earlier filed a written motion to suppress such evidence. [113]. Indeed, the

9

Government has already acknowledged in its response to that motion that, incident to Mr. Lewis' arrest, authorities "conducted searches at the various residences and businesses related to the investigation *and seized evidence*." [132], at 2 (emphasis added), yet no Lewis evidence bag was made available during the September 8 production.[5]

In sum, the Government has not complied with Specific Discovery Deadline #3.

### D. Identification of its Agents Who Took Witness Statements

This Court ordered the Government to identify its agents, unless it sought a protective order.

> 4. The government shall, no later than September 8, 2008, provide the identity of any law enforcement agent who took witness statements in this matter. If the government has a specific basis for withholding this information for a particular agent, the government shall indicate that basis to the Court no later than September 8, 2008. A basis related to the generally assumed violent nature of cocaine-trafficking will be insufficient to justify non-disclosure.

To date, the Government has not provided the defense with any list of the law enforcement agents who took witness statements in this case. Nor has the Government indicated to the defense that it has approached this Court for a protective order that would delay or prevent that production.

This court in its August 15 Order clearly balanced the defendants' Sixth Amendment rights to a fair trial with the government's possible safety concerns for a particular officer. But the government has failed to provide the identity of *any* officer; nor, to the defense's knowledge,

---

[5] For other physical evidence seized from the Dan Viking, the Government contends that defense counsel must travel to Miami to view it. Defense counsel does not believe that this Court's August 15 Order on discovery contemplated that the Government could insist that defense counsel must undertake the expensive and time-consuming task of obtaining travel authorizations to travel en masse to Miami to review evidence only a few weeks before trial. The Government seeks to be excused from having to do more, by claiming that it does not plan to use this evidence itself. But Fed. R. Crim. P. 16(a)(1)(E) is clear in also requiring production of any physical evidence material to the defense. The Government's offer is ultimately this: after many months of non-production, it says that defense counsel can travel to Miami to review what was provided long ago to defense counsel in another federal criminal case involving the Dan Viking. If anything, the Government's response only highlights why it was inappropriate for the Government to insist upon trying to assert venue over this case in Washington, D.C.

has it indicated in any pleading filed with the court why this information has been omitted. This complete omission is in direct disobedience of the court's directive. As a practical matter, it also precludes any reasonable possibility that the defendants will be able to investigate the backgrounds and credibility of such officers, many of whom are from Colombia and other countries, in sufficient time to effectively use such material at trial. In addition, it effectively precludes any reasonable possibility that the defendants will be able to learn anything about the substance of the statements that the officers took from witnesses or the circumstances under which (or even the language in which) such statements were taken, thus handcuffing the defense from having the ability to seek to exclude, impeach, interpret or otherwise discredit such witness statements at trial.

The Government has failed to meet Specific Discovery Deadline #4. Accordingly, at a minimum, the government should not be permitted to present the testimony of any officer who took a witness statement, nor should the witness from whom the statement was taken be allowed to testify.

**E.  Defendants' Statements**

This Court also ordered immediate production of any defendant's statement. [238], at 2. The Government has since admitted that it failed to meet this Specific Discovery Deadline #5 as to Mr. Delgado-Gomez, but it subsequently moved for, and received relief from this deadline as to that statement. Although the Government obtained this relief, it is worth noting that the Government also failed to comply with this directive, meaning that _each_ of the five Specific Discovery Deadlines established in this Court's August 15, 2008 Order has been violated.

### F. **Other Discovery Matters**

In addition to the five Specific Discovery Deadlines, the August 15 Order also ruled on certain other discovery matters. For example, General Order 6 ordered the Government to "set forth *specific* responses *to each* of defendants' requested discovery items," [238], at 4-5 (emphasis added), both for Defendants' motion for missing discovery [187] and Mr. Delgado-Gomez's motion for pretrial discovery [230], no later than August 22, 2008. After that response by the prosecution, the Order stated that "the defendants may renew their motion for mandated missing discovery as to the specific government responses to which defendants object."[6]

On August 22, 2008, the government filed its Response To Defendant's Joint Motion To Order Mandated Discovery [246], which did not comply with the Court's Order. In that Response, the Government argued that the defendants were not entitled to what was requested, set forth limited steps the Government had taken to obtain items not in its possession, and provided information about the Count Six items which had been in the custody of the United States for years, not months, and yet had never been disclosed to the defendants. The pleading did not answer any enumerated question, as directed by the Order.[7] Instead, the Government stated that the lead prosecutor had gone to Colombia to meet with the DEA and Colombian officials, and that police officers were copying hundreds of pages of files related to this case and that the requested information would be found somewhere in those documents to be provided at an unknown future date.

___

[6] Because the government did not provide specific responses to the enumerated requests, the defendants are constrained to respond generally, based upon the manner in which the government elected to respond.

[7] The government did provide some information about lab reports and information about the wiretaps but generally stated that this, too, would be forthcoming.

Confronted with this unsatisfactory pleading, defense counsel sent a letter to the government attorney indicating that the defendants disagreed that the generalized response complied with the August 15 Order, and suggesting that a response answering the posed questions be sent. Although the Government stated that it would consider the issue, no specific response has ever been received by the defendants.[8]

On September 1, the defendants received 293 pages of documents in Spanish; on September 8, approximately an additional 10,000 pages in Spanish on discs were served. On that same day, at the evidence inspection, defense counsel were given access to 13 bags of documents and things, almost, if not all, in Spanish. The number of pages in those bags is unknown but it appears to consist of thousands of additional pages in Spanish. At the production, defense counsel requested access to a copier so that they could make duplicates of the documents in the potential evidence bags. Because the number of documents was extremely large, the government was unwilling to provide copies and insisted that all document requests be sent to a litigation service and paid for under the Criminal Justice Act, not by the Department of Justice.

To date, none of the Government's productions have complied with the Court's Order by addressing the specific enumerations in the defendants' discovery motions. Instead these productions harken back to old abusive civil discovery practices where parties turned over rooms of full file cabinets with the admonition, "Discover away." The only difference is that this is worse because all of the documents have to be translated first to determine their content, a

---

[8] In light of the Government's offer to consider the requests further, defendants decided to wait until the September 1st and 8th deadlines had passed to determine whether the Government ultimately complied with the Order before bringing this matter to the Court's attention. Unfortunately, the despite their volume, the recent disclosures are not terribly informative, given that perhaps 99% of the newly-produced original documents are in Spanish and that there is often no designation as to their content, relevance or evidentiary value.

project likely to take many months to complete – and the fact that, rather than simply a money judgment, these defendants' lives hang in the balance, since they face substantial prison terms.[9]

As a part of the disclosure on September 8, 2008, the government also included notice of *an entirely new wiretap authorization and investigation* on German Villegas-Mejia, and a second investigation of him and Gerardo Tobon-Rojas, entitled "Operation Maicao2."[10]  No transcripts of the second wiretap were provided.  Until this document dump, we had not been informed about it, or of the other investigation.  Also included in the package for September 8, as previously noted, was an indication that the government had an additional 43 pages of transcripts, the English translations of which it intended to disclose on September 10, although the August 15 Order had required that all transcripts be provided by September 1, 2008.  Ten days after the Order's deadline, without seeking leave of Court, this too was just produced – later than had been promised, via email, at around noon today (September 11).

The Government's Response also made a number of other promises which appear to be non-compliant with the Order, and not met by the prosecution in any event.  They are as follows: (1) the Government has not timely provided promised information for the Colombian chemist(s) who performed laboratory testing on the controlled substances; (2) it is unknown whether the promised Colombian documentation supporting the wiretaps was included in the mountain of paper provided in the past several days, (3) notice about the procedures used to identify the

---

[9] The government is the entity that has initiated this international litigation and yet, it does not want to foot this expensive bill.  Rather, it suggests that all translation costs of thousands of pages and all litigation costs associated with copying potential government evidence should be borne by the Criminal Justice Act budget, which is a limited one and frequently depleted.  Allowing the Department of Justice to shift these costs may well lead to an inability to pay for criminal investigations in local neighborhoods and handled by the Office of the United States Attorney, not the Department of Justice.     Moreover, transferring this production time to defense counsel rather than the prosecution team which now includes a large number of government attorneys will lead to costly vouchers.

[10] Even the Government could not open all of this file, yet it was "disclosed" to the defense.

14

defendants is insufficient, as there is no such thing as a "routine, investigative" procedure; rather, photo arrays, show-ups, line-ups, comparisons with surveillance are the types of procedures, (4) extradition documents on each of the defendants were not designated, but again, may be buried in the pile of Spanish papers received and (5) no drugs, packaging or containers have yet been provided for any of the four seizures; all we have are photographs of items selected by the Colombian and/or American governments, and a promise that the Dan Viking sample will be brought to Washington, D.C. at some unspecified time.

The defendants also made requests to examine and copy/photograph the rest of the Dan Viking evidence – 23 items related to Count Six, listed in earlier discovery.  These items have been in the custody of the United States, not Colombia, for years.  Despite the Government's Response that it would provide copies of the documents and an opportunity to view the physical evidence, neither has occurred.  In fact, at the eleventh hour, the Government informed the defendants that the evidence would be available only in Miami on September 11, for four hours. A more unworkable proposal is hard to imagine.  Requiring ten lawyers with investigators and experts to travel to Florida to view evidence that the government has had in its possession for years would be enormously costly and ineffective.  In addition, there is little likelihood that any expert could examine and review the contents of the various mechanical items and navigation devices in a four-hour window.  The more reasonable procedure would be to transport the 23 items to Washington, D.C. for viewing and examination over a period of days.  Only the availability of the boat, the Dan Viking, itself, should require travel to Florida.[11]

---

[11] There is no indication that the government has retained possession of it.

In addition to their joint motion for discovery, the defendants also filed a Joint Motion to Suppress Evidence [198], in which they indicated that they did not have adequate information about evidentiary seizures in this case. To date, the government still has neglected to inform the defendants about any specific searches in Colombia, although it now appears that the boats, co-conspirators and defendants, as well as their homes and cars, may have been searched. This has been discerned from the government's notice that the items disclosed on September 8, 2008 came from the defendants and from what appeared to be inventories (in Spanish) included in the packets for some of the defendants. It also appears that certain of the so-called search warrants may have actually been issued by Colombian prosecutors (not magistrates), based on generic claims of alleged drug involvement by law enforcement officers, who failed to identify any specific evidence in support of the requests. Whether the government intends to offer any items seized from the defendants is unknown, but it does appear that the Government intends to introduce so-called asset reports which were seized from some unknown person and place, in connection with Count Four.[12] These reports were encompassed in 56 pages of documents (many again in Spanish), without any indication of what they were, where they were found, or if they are significant.

In short, much of the new documentation, before being admitted into evidence at trial, would also need to be subjected to suppression hearings, following the translations of these newly produced documents, particularly given the recent revelations that reveal an obvious joint venture between the United States and Colombian governments in this investigation.

---

[12] There is limited information that papers of some sort were thrown into the water from the Guayacan in Count Four. Which documents is unknown. Moreover, without access to the originals, which we have not been given, it is impossible to determine whether the documents were retrieved from that location.

In sum, the Government's latest productions fail to comply with this Court's August 15 Order, and also make plain that these defendants cannot possibly receive due process at the October 1 trial that has long been scheduled in this case. Stated simply, there should never be a case in which the defendants are held in detention for years, only to then be confronted with perhaps 90% of the related documention and evidence dumped on them, only three weeks before trial – particularly when a great deal of that evidence is still in Spanish. The Government has no good explanation for its delays, yet those delays continue. Just today, on the eve of the Status Conference, the Government finally provided the defense with what it calls a Notice of Experts, naming *seven* newly-designated trial experts, including three Colombian chemists who are being identified after the August 15 Order's deadlines. This "Notice" is simply a letter e-mailed from the prosecutor with a statement of the "topics at trial" on which their experts are prepared to testify. There are no accompanying reports or any written summaries about what these experts will testify at trial, other than the letter's generic references to topics that they plan to discuss at trial, such as its "notice" of how three of its experts will talk about "coded language," without any specification whatsoever as to what they may actually say at trial. That is not what the rules of due process require. *Cf.* Fed. R. Crim. P. 16(a)(1)(G) (defendants entitled to summaries of experts; "The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications).

This Court need not proceed with a trial that is a train wreck waiting to happen – with multiple surprises and mid-trial continuances inevitable, and due process so obviously lacking that a broad and viable challenge under 28 U.S.C. § 2255, in the event of convictions, is a virtual certainty. The defendants are filing, contemporaneously herewith, a Reply Brief in support of their previously-filed Motion to Dismiss this case for lack of due process – which remains

pending before this Court. In light of the Government's multiple violations of the August 15

Order – and the current chaotic state of this case, with its large Spanish discovery dumps only a

few weeks before a 4-6 week trial, after months if not years of inaction while the defendants sat

in custody – it is time for that motion to be granted, so that this case can be mercifully closed.

/s/
Gregory S. Smith
D.C. Bar No. 472802
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381
On behalf of Carlos Delgado-Gomez (#10)

/s/
Anthony Martin, Bar No. 362537
On behalf of Jesus Antonio Murillo-Lenis (#2)

/s/
Diane S. Lepley, Bar No. 368927
On Behalf of Ranfer Rios-Mercado (#3)

/s/
Ron Earnest, Bar No. 477305
On behalf of Enrique Oyola Ropero (#12)

/s/
Heather Shaner, Bar No. 273276
On behalf of Jose Hugo Alvarez-Lozano (#15)

/s/
Cynthia Katkish, Bar No. 418876
On behalf of German Villegas-Mejia (#17)

/s/
Mitchell Seltzer, Bar No. 261933
On behalf of Fernando Zapata-Bermudez(#18)

/s/
Howard B. Katzoff, Bar No. 348292
Counsel for Gerardo Tobon-Rojas (#19)

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S NOTICE OF AVAILABILITY OF EVIDENCE is being served upon counsel for the United States and all co-defendants' counsel through the Electronic Case Filing system.

This 11th day of Septemer, 2008.


_____/s/_____
Gregory S. Smith